UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

DAISY VILLALOBOS,

                       Plaintiff,                  COMPLAINT

    - against -                      Index #: 16CV5904

THE CITY OF NEW YORK,  CHRISTIA
LOPEZ, Shield 24864, JOHN DOE 1-4, the
names being fictitious and currently unknown,
employees of the New York City Police
Department,

                                   **Jury Trial Demanded**

                Defendants.
--------------------------------------------------------------x

      Daisy Villalobos, by her attorneys, Stecklow & Thompson, alleges the following upon information and belief as his Complaint.

## Nature of the Action

1.      This civil rights action arises from the April 29, 2015 unlawful arrest of Daisy Villalobos by New York City Police Officers at the direction of high-ranking supervisory officials.  Plaintiff's claims are under the United States Constitution's First, Fourth, Fifth, Sixth, and Fourteenth Amendments, and New York common law.  Plaintiff seeks compensatory and punitive damages for violation of her civil rights under 42 U.S.C. §1983.

## Jurisdiction and Venue

2.      This action arises under the United States Constitution and 42 U.S.C. §1983.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and §1343(3).  Plaintiff requests that this Court exercise pendent jurisdiction over those state law claims arising out of the same common nucleus of operative facts as do Plaintiff's federal claims.

3.     Under 28 U.S.C. §1391(b), venue is proper in the Southern District of New York because a substantial portion of the claims arose in that judicial District.

Parties

4.     Plaintiff Daisy Villalobos is a citizen of the United States of America living in the City and State of New York, County of Kings.  She was, at the time of the incidents complained of, a twenty-two year old college student who had never before been arrested.

5.     Defendant THE CITY OF NEW YORK is a municipal corporation duly incorporated and existing under the laws of New York State.  Pursuant to its Charter, New York City has established and maintains a Department of Police as a constituent department or agency. At all times relevant, the City of New York employed the police officers involved in the incidents underlying this lawsuit.

6.     The City of New York was at all times relevant responsible for all policies, practices, supervision, implementation, and conduct of Police Department matters and for the appointment, training, supervision, and conduct of all Police Department members of service.

7.     Defendant JOHN DOE 1 was at all times relevant a duly appointed and acting employee of the New York City Police Department holding a supervisory rank and assigned at all relevant time to supervise and control subordinate police officers.  He is sued in his individual capacity.

8.     Defendant CHRISTIA LOPEZ was at all times relevant employed by the New York City Police Department and assigned, upon information and belief, to Patrol Borough Brooklyn South.  He is sued in his individual capacity.

9.      Defendant JOHN DOE 2-4 were at all times relevant employed by the New York City Police Department and assigned to police the April 29, 2015 demonstration at issue here. They are sued in their individual capacity.

10.     At all times relevant, Defendants LOPEZ and JOHN DOE 1-4 (the "individual Defendants"), and the other police personnel involved in the incidents underlying this lawsuit were acting under color of state law.

11.     The individual Defendants and other police personnel involved in the incidents underlying this lawsuit were, at all times relevant, agents, servants and employees acting within the scope of their employment by the City of New York.

<u>Notice of Claim</u>

12.     On August 13, 2015, Plaintiff filed a Notice of Claim upon the City of New York, by delivering copies thereof to the person designated by law as a person to whom such claims may be served.

13.     The Notice of Claim was in writing and was sworn to, and contained the name and post office address of the Plaintiff and her attorneys.

14.     The Notice of Claim set out the nature of claims, the time when, the place where and manner by which the claims arose, and damage and injuries claimed to have been sustained.

15.     Defendant City of New York assigned the matter Claim Number 2015PI024726.

16.     Plaintiff thereafter brought a proceeding under New York County Index No. 162910/2015 to have the Notice of Claim deemed timely.

17.     On January 29, 2016, the request was granted and the Notice of Claimed deemed timely served.

-3-

18.     On May 9, 2016, Plaintiff appeared for and completed her testimony under GML §50-h.

19.     At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

20.     This action was asserted within one year and ninety days after the happening of the events upon which the claims are based.

Facts Underlying
Plaintiff's Claims for Relief

21.     Beginning or April 29, 2015 at about 9:25 p.m. at and around West Houston Street between Sullivan and Thompson Streets in Manhattan, Daisy Villalobos was unlawfully arrested by New York City Police Department employees, including Defendant Doe 1, Christia Lopez, and John Doe 2-4.

22.     On April 19, 2015 in Baltimore, Maryland, Freddy Gray died while in police custody.  Ten days later, on April 29, 2015, thousands, including Daisy Villalobos, participated in a demonstration in solidarity with Baltimore which began at Union Square in Manhattan.

23.     Plaintiff arrived at Union Square at around 1 p.m. and, after a day of speakers and other events, Ms. Villalobos and other demonstrators left Union Square.

24.     For the next several hours, Ms. Villalobos marched in protest and solidarity.

25.     She and many others were marching in and around West Houston Street between Sullivan and Thompson Streets when police personnel following the demonstration issued a single order to get on the sidewalk.

26.     Plaintiff complied with the order.

-4-

27.     Plaintiff was alerted that police, who had been keeping a distance behind her and the other demonstrators, were pretty quickly coming upon the demonstrators.

28.     Plaintiff paused to record police roughly arresting a demonstrator.

29.     Defendant Doe 1 then grabbed Plaintiff's backpack and pulled Ms. Villalobos backwards away from the sidewalk.

30.     Doe 1 pulled Plaintiff down onto the roadway, and her backpack, which included an albuterol inhaler for her asthma, was pulled from her body.  She was put to the ground and then flipped onto her stomach.  Her face struck the pavement.

31.     Ms. Villalobos lifted her head approximately three times to call out about her inhaler, about which she was greatly concerned, and each time a Doe Defendant violently pushed her head into the pavement.

32.     Handcuffs were applied, and Defendant Doe 1 purposefully and violently tightened them.  After more than ten excruciating minutes of insistent complaints about the cuffs, they were cut from her wrists and new flexi-cuffs applied.

33.     She was taken to One Police Plaza for arrest processing.

34.     Plaintiff was segregated from the other prisoners until she received medical care.

35.     While Daisy Villalobos was jailed, New York City Police Department employees, including individual Defendants, prepared or allowed to be prepared false police reports accusing Plaintiff of Disorderly Conduct and Resisting Arrest, a misdemeanor punishable by up to a year in jail.

36.     After approximately six or more hours, Plaintiff was taken to Manhattan Central Booking where she was held until her April 30, 2015 arraignment.

37.     While she was awaiting arraignment, Police employees, including Defendant Lopez and John Doe 1, caused or allowed false statements to be made to the New York County District Attorney's Office.

38.     The misrepresentations caused Plaintiff's prosecution under New York County Criminal Court Docket Number 2015NY027058 on the false charges of violating Penal Law §205.30 (Resisting Arrest, a Class A Misdemeanor punishable by up to one year in jail) and PL §§240.20(5), and (6) (Disorderly Conduct - obstructing pedestrians and congregating with others persons in a public place and refusing to comply with a lawful order of the police to disperse).

39.     On the date of arrest, there was no outstanding warrant for the arrest of Plaintiff.

40.     Plaintiff was arraigned on the charges and released and required, under threat of issuance of an arrest warrant and of arrest, to appear in Criminal Court to defend against the charges.

41.     Ms. Villalobos returned to Criminal Court on June 5, 2015 and the charges were adjourned in contemplation of dismissal and thereafter dismissed and sealed.

42.     The actions leading to Daisy Villalobos's arrest were taken pursuant to City of New York policy and training and were caused thereby.

43.     The individual Defendants, despite having a reasonable opportunity to do so, took no action to prevent, end, or truthfully report the unlawful conduct to which Ms. Villalobos was subjected.

44.     The individual Defendants' acts and omissions caused Daisy Villalobos to suffer loss of liberty, mental and emotional upset, physical pain and injury, including abrasions over the right supraorbital area and right zygomatic area, bleeding from her nose and mouth, swelling to

her left face, ecchymoysis to her right shoulder and right bicep, swollen and abraded wrists, and ecchymoysis and abrasions to her left elbow, as well as deprivation of her constitutional rights, among other injuries.  Plaintiff suffered the indignities and debasement of the arrest-to-arraignment process and the false testimony and evidence prepared by City of New York police.

45.     The individual Defendants, at all times relevant, and by using force on, arresting, imprisoning, and offering false evidence to the District Attorney and Criminal Court Judges, and in violating her rights of free speech and public assembly, acted intentionally, willfully, maliciously, negligently, and with reckless disregard for and deliberate indifference to Plaintiff's rights and physical and mental well-being.

46.     The City of New York, through its officers, agents, employees, and final decision makers, was deliberately indifferent to the constitutional rights of Daisy Villalobos and others.

FIRST CLAIM FOR RELIEF
VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE FIRST AMENDMENT

47.     Plaintiff repeats the allegations of the foregoing paragraphs as though fully stated herein.

48.     By the conduct described herein, individual Defendants unlawfully denied Plaintiff's rights of association, public assembly, and of free speech under the First Amendment. The unlawful arrest and use of force deterred and punished Plaintiff's exercise of her First Amendment rights.  The acts complained of herein were taken in retaliation for Plaintiff's exercising her First Amendment rights.

49.     The acts and omissions described herein were taken pursuant to City of New York policies and practices regarding policing First Amendment activity.

50.     As a consequence thereof, Daisy Villalobos has been injured.

SECOND CLAIM FOR RELIEF
VIOLATION OF PLAINTIFF'S RIGHT TO BE FREE FROM
UNREASONABLE SEARCHES AND SEIZURES UNDER THE FOURTH
AMENDMENT TO THE UNITED STATES CONSTITUTION'

51.     The Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

52.     By the actions described above, the individual Defendants, in violation of 42 U.S.C. §1983, deprived Ms. Villalobos of her rights secured by the United States Constitution to be free and secure in her person and her right to be free from arrest or search, except on probable cause or pursuant to warrant.

53.     Plaintiff was unlawfully arrested and imprisoned, and, as a consequence thereof, Daisy Villalobos has been injured.

THIRD CLAIM FOR RELIEF FOR FALSE ARREST
(NY State Claim)

54.     Plaintiff repeats the allegations of the foregoing paragraphs as though fully stated herein.

55.     By reason of the foregoing, Plaintiff was intentionally confined without privilege or probable cause to believe a crime had been committed.  Plaintiff was aware of and did not consent to the confinement.  Plaintiff was thereby unlawfully detained, arrested and imprisoned.

56.     As a consequence thereof, Daisy Villalobos has been injured.

FOURTH CLAIM FOR RELIEF
VIOLATING PLAINTIFF'S RIGHT TO BE FREE
FROM UNREASONABLE SEARCHES AND SEIZURES UNDER THE FOURTH
AMENDMENT TO THE UNITED STATES CONSTITUTION

57.     The Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

58.     By the actions described above, individual Defendants deprived Ms. Villalobos of her right secured by the Constitution and laws of the United States in violation of 42 U.S.C. §1983 to be free from unreasonable force.

59.     As a consequence thereof, Daisy Villalobos was injured.

FIFTH CLAIM FOR RELIEF FOR ASSAULT
(NY State Claim)

60.     Plaintiff repeats the allegations of the foregoing paragraphs as though fully stated herein. By the actions described above, Plaintiff was intentionally placed in apprehension of imminent harmful and offensive contact.

61.     As a consequence thereof, Daisy Villalobos has been injured.

SIXTH CLAIM FOR RELIEF FOR BATTERY
(NY State Claim)

62.     Plaintiff repeats the allegations of the foregoing paragraphs as though fully stated herein.

63.     By the actions described above, Plaintiff was intentionally touched in a harmful and offensive manner.

64.     As a consequence thereof, Daisy Villalobos has been injured.

SEVENTH CLAIM FOR RELIEF
DENIAL OF PLAINTIFF'S FAIR TRIAL RIGHTS

65.     The Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein. Individual Defendants created false evidence against Daisy Villalobos.

66.     Individual Defendants forwarded false evidence to prosecutors in the New York County District Attorney's office.

67.     In creating false evidence against Plaintiff, and in forwarding false information to prosecutors, individual Defendants violated Plaintiff's right to a fair trial under the Sixth and Fourteenth Amendments of the United States Constitution.

68.     As a consequence thereof, Daisy Villalobos has been injured.

EIGHTH CLAIM FOR RELIEF FOR FAILURE TO INTERVENE
TO PREVENT THE VIOLATION OF PLAINTIFF'S CIVIL RIGHTS

69.     The Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

70.     The individual Defendants, despite having a reasonable opportunity to prevent, end, or truthfully report the misconduct to which Plaintiff was subjected, failed to intervene, thereby violating Plaintiffs rights under the Fourth, Fifth, Sixth and Fourteenth Amendments.

71.     As a consequence thereof, Daisy Villalobos has been injured.

NINTH CLAIM FOR RELIEF AGAINST
DEFENDANT DOE 1 FOR IMPROPER SUPERVISION OF SUBORDINATES

72.     Plaintiff repeats the allegations of the foregoing paragraphs as though fully stated herein.

73.     At all times relevant, Defendant Doe 1 was employed as a supervisor by the City

of New York Police Department.  He had direct supervisory authority over and responsibility for

the conduct of the other individual Defendants.

74.     Defendant Doe failed to properly supervise his subordinates or to otherwise take

action to remedy the wrong done to the Plaintiff.  Defendant Doe was grossly negligent in

supervising the other individual Defendants by, among other things, instigating and directing

subordinates to unlawfully arrest and use force on Plaintiff.

75.     As a consequence thereof, Daisy Villalobos has been injured.

TENTH CLAIM FOR RELIEF
AGAINST DEFENDANT THE CITY OF NEW YORK

76.     Plaintiff repeats the allegations of the foregoing paragraphs as though fully stated

herein.

77.     At all times relevant, the City of New York and all individual Defendants owed a

duty of care to Plaintiff.

78.     Defendants, including City of New York, violated the duty of care owed to

plaintiff.

79.     As a consequence thereof, Daisy Villalobos has been injured.

ELEVENTH CLAIM FOR RELIEF
AGAINST DEFENDANT THE CITY OF NEW YORK

80.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

81.     This action addresses the pattern, policy, and practice of the City of New York of

misapplying the disorderly conduct statute to peaceful protesters and impermissibly interfering

with activity protected by the First Amendment, thereby causing seizures and arrests in violation

of the Fourth Amendment of people engaging in protected expressive speech and activity.

82.     Defendant City of New York has implemented, enforced, encouraged, and

permitted a policy, practice, and/or custom of arresting individuals, including Plaintiff, engaged

in expressive speech activity absent actual criminal conduct in violation of rights under the First

Amendment and the Fourth Amendment.

83.     The City of New York's arrest and prosecution of and preparation and use of false

evidence about Plaintiff resulted from and were directly and proximately caused by these

policies, practices, and/or customs.  The City of New York, through it officers, employees,

agents, and final policymakers, acted with deliberate indifference to the constitutional rights of

those seeking to exercise their First Amendment rights by (a) failing to properly train and

supervise City of New York Police personnel and other law enforcement personnel policing

peaceful protests, (b) inadequately monitoring City of New York officers and their improper

arrest practices, and failing to correct unconstitutional actions, (C) failing to sufficiently

supervise City of New York officers engaging in constitutional abuses, and (d) encouraging,

sanctioning, and failing to prevent use of the City of New York's unconstitutional policy,

practice, and customs.

The City of New York Knew or Should Have Known That Police Training Was
Insufficient Yet Was Needed For Demonstrations Against Police Misconduct.

84.     The City of New York is constantly alive with citizens exercising their right to

protest and give voice to the powerless and disenfranchised.

85. Even before the Baltimore Solidarity demonstrations of April 2015 and the Black Lives Matter protests beginning in December 2014 following the failure to indict for the death of Eric Garner, the City of New York knew and understood from the Occupy Wall Street movement and, before that, the protests surrounding the Iraq war and 2004 Republican National Convention that its officers needed training in policing expressive speech activity.

86. At all times relevant, Defendant City of New York knew to a moral certainty that members of its police force, including the employees involved in Plaintiff's arrest, would regularly encounter people engaged in expressive speech activity.

87. First Amendment activity is a regular feature of life in the City of New York, and Defendant City's final policymakers knew to a moral certainty that policing First Amendment-protected activity was and is a recurrent issue.

88. Even so, Defendant City of New York has failed to provide adequate training to its police personnel in First Amendment considerations and the handling of protesters and others exercising First Amendment rights.  The City of New York has failed to appropriately police the many non-violent and lawful expressions of speech, resulting in the breach of individual rights, including those of Daisy Villalobos, and has failed to establish appropriate training policies, methodologies, and systems to address individuals conducting peaceful and legal expressive speech, protected under the First Amendment.

89. On June 23, 2016, the City of New York testified in a deposition via a FRCP 30(b)(6) witness that there is no First Amendment training provided to members of the service after leaving the Police Academy and little instruction or training when they are in the Academy concerning the lawful and proper policing of First Amendment activity.

90.     For example, the City of New York testified that in training to become a member of the NYPD, as well as Sergeant training, Lieutenant training, Captain training, Inspector training, lead training, baton training, pepper spray training, and mass formation training, no training is given about an individual's constitutional rights and appropriate policing of First Amendment activity.

91.     Moreover, and in response to the Occupy Wall Street and Black Lives Matter movements, the NYPD and its personnel have trained for mass protest situations.  The training, however, has failed to address the First Amendment rights of protestors and has not corrected the City of New York's customs and policies in disregarding these rights.

92.     The City of New York further testified that the NYPD does not train its officers on how disorderly conduct statutes are interpreted by courts, but that the NYPD only teaches the words of the statute as written, and only does so during a police officer's first six months of training at the police academy.

93.     Even before the Occupy Wall Street and Black Lives Matter movements began, the NYPD's failure to properly train police was exposed through litigation surrounding arrests made during the 2003 sidewalk protest of the Carlyle Group office.  Protestors were arrested while lawfully on the sidewalk without blocking pedestrian traffic.  The City paid approximately two million dollars ($2,000,000.00) to settle that case.

94.     The NYPD's history of failure to properly train police was further illustrated through litigation surrounding the thousands of arrests made during the 2004 Republican National Convention.  Settlements of these cases cost the City of New York approximately eighteen ($18,000,000.00) in damages and fees to plaintiffs, and spent sixteen million dollars

($16,000,000.00) defending the lawsuits to outside counsel and the New York City Law Department, more than thirty million dollars.

95.     The inadequacy of the City's training and instruction of its Police employees regarding First Amendment issues and lawful policing of expressive speech activities is also illustrated by the numbers of arrests relating to Occupy Wall Street protests in 2011 and 2012, the dismissal rates relating to those arrests, the resulting lawsuits, and the failure of relevant police agencies, including the City of New York, to learn from or adjust their unlawful conduct and policies.  See The Global Justice Clinic (NYU School of Law), Walter Lestner Int'l Human Rights Clinic (Fordham Law School), Suppressing Protest: Human Rights Violations in the U.S. Response to Occupy Wall Street (July 21, 2012) and Supplement attached to this complaint, summary of OWS Lawsuits.

96.     Upon information and belief, City of New York has not made use of the Suppressing Protest Report to assess the adequacy of it policies and practices relating to policing protests.

97.     It is now Ms. Villalobos' arrest during a demonstration in solidarity with Baltimore which shows the continued inadequacy of the City's training and instruction of its police employees have received regarding First Amendment issues and lawful policing of expressive speech activities.

98.     The City of New York's lack of instruction has caused, in contravention of established legal precedent, the belief among individual Defendants and other City of New York employees that the fact that people are engaged in First Amendment-protected activity has no effect on the manner with which the disorderly conduct statute is employed against them.

<u>The Principles of Proper Policing of Expressive Speech Activity</u>

99.     The City of New York's training and instruction should, but does, not consist of clearly established guidelines for police conduct in expressive speech protest situations, including, but not limited to, these well established legal rights and principles:

● Under New York State and federal law, even if protestors block an entire sidewalk, causing pedestrians to step into the street, such conduct is not enough to justify arrest for disorderly conduct.

● Under federal law, when a person is engaged in political or expressive speech activity, the First Amendment of the Constitution requires that the government, including the police, give fair warning to protestors that they must disperse before arresting them.

● Under New York State law, if a person's conduct does not cause, or recklessly threaten to cause, a substantial impact on the public at large, such as a breach of the peace, then there is no probable cause for an arrest for disorderly conduct.

● Under New York State and federal law, a person may only be subject to arrest if there is individualized probable cause to believe that the particular individual arrested committed an offense. Further, probable cause to make an arrest does not arise merely because of a person's presence within a group of people, even if some people in that group are committing offenses.

● Under federal law and the First Amendment, it is unlawful to arrest a protestor for disorderly conduct unless the protestor is creating a "clear and present danger" of breach of the peace.

● Under New York State and federal law, the police may not disperse a protest without having a lawful reason to do so.

● Under the Consent Decree entered in Black v. Codd, 73 Civ. 5283, that when a person is detained, stopped or arrested in public areas, a person or persons not involved in the conduct for which the first person is stopped or arrested may remain in the vicinity of the stop or arrest as an onlooker.

● Under the Consent Decree entered in Black v. Codd, 73 Civ. 5283, taking photographs or remaining in the vicinity of a stop or

arrest, without a separate and unlawful act, does not constitute
probable cause for arrest or detention of an onlooker unless the
safety of officers or others is directly endangered or the officer
reasonably believes they are endangered.

100.    Proper training in these clearly-established principles of lawful police conduct

would have prevented the unlawful arrest and prosecution of Daisy Villalobos on April 29, 2015.

101.    The instruction and training that City of New York Police employees, including

the Defendants herein, may have received did not address First Amendment issues, how First

Amendment consideration change policing methods, or the proper standards for arrest related to

disorderly conduct when expressive speech activity was involved.

102.    Furthermore, the April 29, 2015 Baltimore Solidarity protests were policed not

merely by patrol officers, but by high-ranking officers such as John Doe 1, among others.  John

Doe 1, as a high-ranking City of New York Police employee, has undergone extensive training

as he progressed through the ranks of the City of New York and, upon information and belief,

did not receive any additional training on these issues.  Like most City of New York officers,

John Doe 1's training on these issues only occurred during their long-ago, six-month period spent

at the Police Academy, without any subsequent training on these issues.

103.    These high-ranking officers had the ability to see that City of New York officers

and other law enforcement personnel were incorrectly understanding and applying the law.

104.    These high ranking officers had the ability and the duty to set policies that would

prevent City of New York officers from making unlawful arrests because of a failure to

understand the law.

105.     These high ranking officers had the ability and the duty to ensure that City of New York officers had training that would prevent the officers from making unlawful arrests because of a failure to understand the law.

106.     The City of New York has failed to train its Police Officers and supervisors, including the supervisory personnel directly involved in Daisy Villalobos's arrest and use of force on the proper treatment of individuals engaged in expressive speech activity.

107.     The City of New York has demonstrated deliberate indifference to the rights of people engaged in protected speech and conduct, including Daisy Villalobos, by facing a choice and deciding not to properly train and supervise police personnel assigned to the April 29, 2015 Baltimore Solidarity demonstrations.

108.     The City of New York has shown deliberate indifference to the unlawful implementation of the policies and practices and failed to properly train its officers in relation to how the exercise of expressive speech affects the policing of protests, including, among other things, the policing for the offense of disorderly conduct.

109.     The City of New York was on notice and faced a choice and chose not correct its policies through training, and never conducted training to prevent or address the problematic policies, and instead, in an exhibition of deliberate indifference, has allowed the activity to continue.

110.     As a consequence thereof, Daisy Villalobos has been injured.

<u>Request for Relief</u>

WHEREFORE, Plaintiff respectfully request that judgment be entered that the rights of Daisy Villalobos to be free from unreasonable arrest, force, and prosecution under the United States Constitution were violated, together with:

(A)     Compensatory damages in an amount to be fixed at trial;

(B)     By reason of the wanton, willful and malicious character of the conduct complained of herein, punitive damages from the individual Defendants in an amount to be fixed at trial;

(C)     An award to Plaintiff of the costs and disbursements herein;

(D)     An award of attorney's fees under 42 U.S.C. §1988;

(E)     Such other and further relief as this Court may deem just and proper.

Dated: July 25, 2016
      New York, New York

                         Respectfully submitted,

                         STECKLOW & THOMPSON
                          Attorneys for Plaintiff
                         217 Centre Street, 6th Floor
                         New York, New York 10013
                         Phone: (212) 566-8000
                         Fax:     (212) 202-4952
                         wylie@sctlaw.nyc

                         _____
                         Wylie M. Stecklow

Summary **OWS v. NYPD cases in Southern District of New York**
Settled:

| Caption | Index | Settlement |
|---|---|---|
| Adona v. NYC, et al | 12-cv-7458 (HB) | Rule 68 $25,001 + $35,000 fees |
| Adsluf v. NYC, et al | 13–cv-2295 (LGS) | settled $40,000 |
| Appel v. NYC, et al | 14-cv-07992 (KPF) | settled $20,000 |
| Arce v. NYC, et al | 13-cv-8486 (PKC) | settled $22,500 |
| Baglieri v. NYC, et al | 12-cv-07012 (HB) | settled |
| Ball v. NYC, et al | 13-cv-05563 (RWS) | settled |
| Boss v. NYC, et al | 12-cv-8728 (GBD) | settled $55,000 |
| Brown v. NYC, et al | 13-cv-2058 (NRB) | settled $15,000 |
| Clarke. et al. v. NYC, et al | 13-cv-5303 (RWS) | settled Union Square 9/24/11 |
| Crisp v. NYC, et al | 12-cv-5842 (RWS) | settled Union Square 9/24/11 |
| Dedrick v. NYC, et al | 12–cv-7165 (RWS) | settled Union Square 9/24/11 |
| Dierken. et aI. v. NYC, et al | 12-cv-07462 (RWS) | Settled $145,009, + $112,500 fees  Union Square    9/24/11 |
| Elliot. et aI. v. NYC, et al | 12-cv-992 (RWS) | settled Union Square 9/24/11 |
| Fields v. NYC, et al | 13-cv-8819 (JGK) | settled $75,000, + $15,000 fees |
| Freedman v. NYC, et al | 15-cv-01956 (JPO) | settled |
| Friesdat v. NYC, et al | 14-cv-625 (JGK) | settled |
| Frydman v. NYC, et al | 12-cv-09394 (SAS) | settled |
| Global Revolution TV v. NYC, et al | 12-cv-5086 (GBD) | settled $75,000, + $50,000 fees |
| Gold v. NYC, et al | 13-cv-02142 (VSB) | settled |
| Hanlin v. NYC, et al | 12-cv-5844 (RWS) | settled Union Square 9/24/11 |
| Hopkins v. NYC, et al | 14-cv-09114 (LGS) | settled $25,000 |

| | | |
|---|---|---|
| Iskender v. NYC, et al | 13-cv-2899  (RA) | settled $33500 |
| Jimenez v. NYC, et al | 14-cv-413 (RA) | settled |
| Knefel v. NYC, et al | 13-cv-08881(LTS) | settled $13,000 |
| Koznar v NYC, et al | 15-cv-01484 (SAS) | settled |
| Laugier v NYC, et al | 13-cv-6171 (HB) | settled, $85,000 |
| Lawler v. NYC, et al | 12-cv-5843 (RWS) | settled |
| Meighan v. NYC, et al | 12-cv-7929 (AKH) | settled $55,000 |
| Meltzer-Cohen v. NYC, et al | 14-cv-516 (SAS) | settled |
| Morris v. NYC, et al | 12-cv-07219 (SAS) | settled |
| Nelson v. NYC, et al | 14-cv-09249 (WHP) | settled |
| Occupy Wall Street et al. v. NYC, et al | 12-cv-4129 (GBD) | settled $47,000, + $186,349.58 fees |
| Peat et al v. NYC, et al | 12-cv-8230 (SAS) | settled $598,000 |
| Penley v. NYC, et al | 14-cv-01577(JGK) | settled $25,001 plus $30,000  fees |
| Perloff v. NYC, et al | 13-cv-4175 (KBF) | settled |
| Powell et al v. NYC, et al | 14-cv-08138 (RMB) | settled |
| Premo v. NYC, et al | 13-cv-08141 (WHP) | settled |
| Rechtschaffer v. NYC, et al | 13-cv-0709 (JPO) | settled |
| Reinheart/Eastman v. NYC, et al | 13-cv-8314 (JPO) | settled $40,000 |
| Rivera-Pitre V. NYC, et al | | settled |
| Ross. et al. v. NYC, et al | 13-cv-5012 (VSB) | settled $22,000 |
| Russell  v. NYC, et al | 13-cv-9047 (ALC) | settled |
| Schmidt v. NYC, et al | 13-cv-961 (DLC) | settled $15,002, +$18,000 fees |
| Schoeckert v. NYC, et al | 13-cv-06342 (VEC) | settled |
| Schomburg v. NYC, et al | 12-cv-7161 (RWS) | settled |
| Schrader v. NYC, et al | 13-cv-1995 (HS) | settled $82,500 |

| | | |
|---|---|---|
| Smith v. NYC, et al | 13-cv-02900 (JPO)(JLC) | settled $17,500 |
| Sterling. et al. v. NYC, et al | 12-cv-7086 (RWS) | settled Union Square 9/24/11 |
| Stoeckley & McGregor v. NYC, et al | 13-cv-6173 (VSB) | settled $57,000 |
| Time's Up Inc v. NYC, et al | 13-cv-1081 (GBD) | settled $8500 |
| Treffs v. NYC, et al | 12-cv-3030 (HB) | settled $27,500 |
| Walker v. NYC, et al | 12-cv-09400 (LTS) | settled |
| Wilder v. NYC, et al | 14-cv-8953 | settled |
| Worden v. NYC, et al | SETTLED WITHOUT SUIT FILED | settled $12,500 |

Open

| Case | Index |
|---|---|
| Allen v. NYC, et al | 15-cv-01918 (PKC)(MHD) |
| Arbuckle v. NYC, et al | 13-CV-10248 (ER) |
| Bogart v. NYC, et al | 13-CV-1017 (NRB) |
| Brown v. NYC, et al | 13-CV-1018 (KAF) |
| Caravahlo et al v. NYC, et al | 13-CV-04174 (PKC)(MHD) |
| Case et al v. NYC, et al | 14-CV-09148 (AT) |
| Collins et al v. NYC, et al | 14-CV-08815 (AJN) |
| Dekuyper v. NYC, et al | 14-CV-08249 (DLC) |
| Douglas v. NYC, et al | 14-CV-08124 (ALC)(AJP) |
| Faraone v. NYC, et al | 13-CV-9074 (DLC) |
| Gersbacher v. NYC, et al | 14-CV-07600 (GHW) |
| Gonzalez v. NYC, et al | 14-CV-07721 (LGS) |
| Higginbotham v. NYC, et al | 14-CV-08549 (PKC) |

| | |
|---|---|
| Holmes v. NYC, et al | 14-CV-05253) (LTS(RLE) |
| Kass v. NYC, et al | 14-CV-0705 (ALC)(GWG) |
| Marlin v. NYC, et al | 15-CV-2235 (CM) |
| Marom v. NYC, et al | 15-CV-02017(PKC)(MHD) |
| Martinez v. NYC, et al | 14-CV-08686 (KPF) |
| McMIllan v. NYC, et al | 15-CV-01962 (JMF) |
| Mediavilla v. NYC, et al | 14-CV-8624 (VSB) |
| Meyers et al v. NYC, et al | 14-CV-09142 (ALC) |
| Packard v. NYC, et al | 15-CV-7130 (AT)(RLE) |
| Pesola v. NYC, et al | 15-CV-01917 (PKC)(MHD) |
| Phoebe Berg. et al v. NYC, et al | 12-CV-3391 (TPG) |
| Richardson v. NYC, et al | 15-CV-5775 (PKC) |
| Rodriguez et aI. v. WInski, et al | 12-CV-3391 (TPG) |
| Soto v. NYC, et al | 13-CV-08474-LTS-JLC |
| Tardif v. NYC, et al | 13-CV-4056 (LTS) |
| Vincent v. Winski, et al. | 14-CV-7744 (VSB) |
| Wiles v. v. NYC, et al | 13-CV-2898 (HB) |